UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL FEDERATION OF THE BLIND, on behalf of itself and its members, COLORADO CROSS-DISABILITY COALITION, on behalf of itself and its members, ARTHUR JACOBS, DISHON SPEARS, RICHARD KING, STACY CERVENKA, and JEANINE LINEBACK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs<br><br>- against –<br><br>J.CREW GROUP, INC., a Delaware corporation.<br><br>Defendant | Civil Action No. 15-6337<br><br>**CLASS ACTION COMPLAINT**<br><br><br><br><br><br>Plaintiffs Demand a Trial by Jury |

## CLASS ACTION COMPLAINT

Plaintiffs National Federation of the Blind ("NFB"), on behalf of itself and its members, Colorado Cross-Disability Coalition ("CCDC"), on behalf of itself and its members, Arthur Jacobs, Dishon Spears, Richard King, Stacy Cervenka, and Jeanine Lineback, individually and on behalf of all others similarly situated, (collectively referred to as "Plaintiffs"), by their undersigned counsel, hereby allege as follows against defendant J.Crew Group, Inc. ("Defendant" or "J.Crew")[1]:

## INTRODUCTION

1.      This class action seeks to bring an end to discriminatory actions committed by J.Crew against blind or visually impaired people in New York[2] and throughout the United States.

---

[1] Any reference to J.Crew, unless stated otherwise, is intended to include all of its brands and retail outlets.

[2] Unless otherwise stated, all references to New York are to the state and not the city.

Defendant is knowingly and repeatedly denying blind or visually impaired individuals throughout the United States equal access to the goods and services it provides to its sighted customers who shop at its retail stores.

2.      Blind or visually impaired customers at J.Crew cannot pay for merchandise with a debit card by entering a secure Personal Identification Number ("PIN") at the register when purchasing goods or services, or independently complete a debit or credit card transaction due to visual prompts they cannot see.  J.Crew does this by providing point-of-sale devices ("POS Devices")[3] that use a visual, touchscreen interface that is not accessible to the blind.

3.      Many blind persons, including Plaintiffs, shop at J.Crew's numerous locations throughout the United States.  J.Crew designs, markets and sells its products, including those under the J.Crew®, and Madewell® brands, nationwide.  Its blind customers are entitled to the same privileges and advantages that are available to sighted customers – in particular, the ability to choose and pay for their purchases securely and privately via the same payment methods that are available to other customers.  Inexplicably, J.Crew has failed to provide the same access to its blind or visually impaired customers that its sighted customers enjoy.

4.      J.Crew's failure to comply with the Americans with Disabilities Act, 42 U.S.C. § 12181-89 ("ADA") – which prohibits discrimination in the activities of places of public accommodation – and applicable state laws is especially egregious given that J.Crew has been on notice, for years, that its failure to provide accessible POS devices is causing harm to its blind customers, and is against the law.

---

[3] "POS Device" refers to the electronic device used by a customer at the point of purchase that allows the customer to pay for items with a debit, credit, or other electronic funds card.

5.     For instance, since January 1, 2010, the State of California has explicitly required that merchants operating in its state provide a "tactually discernible numerical keypad similar to a telephone keypad … that enables a visually impaired person to enter his or her own personal identification number or any other personal information necessary to process the transaction in a manner that provides the opportunity for the same degree of privacy input and output available to all individuals ..." Cal. Financial Code § 13082. Although J.Crew is not incorporated or headquartered in California, California boasts the most stores of any state, district or international location where J.Crew has a retail store.  As of June 4, 2015, J.Crew reported a total of 514 stores in the United States; 283 J.Crew retail stores, 88 Madewell retail stores, and 143 factory stores. More than 50 of those stores are located in California.  Despite this near half-decade long requirement in a state where J.Crew has its largest presence, Richard King and Stacy Cervenka encountered non-tactile POS Devices in three of J.Crew's California stores.

6.     In addition, J.Crew has been sued at least six times on this very issue within the last twenty-two months.  In October of 2013, J.Crew was sued in federal court in Pennsylvania. Roughly three months later, Madewell was sued in federal court in Pennsylvania by the same plaintiff as the 2013 lawsuit.  Recently, in a span of three weeks beginning in mid-May 2015, Defendant has been sued four times in federal court in California on the same issue.[4]  Therefore, J.Crew has been on notice that its POS Devices are non-compliant with the ADA and at least two similar state laws for more than twenty-two months, and yet it has not completed the necessary changes to come into compliance nationwide, and it has failed to compensate the millions of blind customers who have been deprived of equal access to its stores for years.

---

[4] One case was originally filed in San Bernardino County Superior Court, but was removed to federal court on July 6, 2015.

7.      Finally, more than a year ago, retail stores throughout the country (including J.Crew) were put on notice by the Department of Justice ("DOJ") – the administrative agency charged by Congress with implementing the requirements of the ADA – that merchants **are required** to provide blind or visually impaired customers a physical keypad or other alternative means to securely input their PIN numbers when purchasing goods or services, when the DOJ filed a Statement of Interest in the United States District Court of the Southern District of Florida.  *See New v. Lucky Brand Dungarees Stores, Inc.*, No. 1:14-cv-20574, (S.D. Fla. April 10, 2014) (hereinafter "*New-SOI*").  As the DOJ explained: "Mr. New's allegation that Lucky Brand violates the ADA when it denies him and other blind patrons a service, privilege or advantage offered as a matter of course to others – the option to securely and independently conduct debit transactions – falls squarely within the ADA's ambit." *Id*. at p. 9.

8.      The technology required to permit J.Crew's blind customers to independently utilize Defendant's POS Devices is readily available and is currently in use throughout the country at other retail establishments, and at various self-service kiosks and at accessible ATMs, which make use of tactile controls and screen reading software that could easily be utilized here.

9.      J.Crew has taken steps to protect the privacy of its sighted customers' personal information by allowing them to independently enter their PINS; it should do the same for its blind customers.

10.      On behalf of themselves and all others similarly situated, Plaintiffs are asking this Court to require J.Crew to provide equal access to all blind customers nationwide, and to require them to pay damages for their failure to comply with the law. By its actions or inactions, J.Crew has violated federal law and the laws of numerous states, including New York, Colorado, California, and Texas, that expressly prohibit discrimination against the blind and that provide for

4

minimum statutory damages for each violation. This class action is intended to end J.Crew's discriminatory practices and provide compensation to the thousands of blind customers who have shopped at J.Crew and have been deprived of equal access to its goods and services.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 12188 and 28 U.S.C. § 1331 as this action involves federal questions regarding the deprivation of plaintiffs' rights under the ADA.  Additionally and alternatively, the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(2) as "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which [a] member of a class of plaintiffs is a citizen of a State different from any defendant." The Court has pendent jurisdiction over plaintiff's claims brought under the laws of the States of New York, Colorado, California, and Texas, pursuant to 28 U.S.C. § 1367(a).

12.    Defendant operates approximately forty-two (42) retail stores in New York and is headquartered in New York, New York. Defendant therefore does substantial business in this judicial district. In addition, some of the Plaintiffs' claims arose in this judicial district, and Defendant's actions have caused injury to consumers who reside in this district, including Plaintiff Jacobs.

13.    Venue in this judicial district is also proper under 28 U.S.C. § 1391 in that a substantial part of the events and omissions giving rise to the claims occurred in this judicial district.

## PARTIES

14.    The National Federation of the Blind ("NFB") is a non-profit corporation incorporated in the District of Columbia, with its principal place of business in Baltimore,

Maryland. It is the largest organization of blind and low-vision people in the United States. Founded in 1940, the Federation has grown to over fifty-thousand members. The organization consists of affiliates and local chapters in every state, the District of Columbia, and Puerto Rico. The purpose of the NFB is two-fold – to help blind persons achieve self-confidence and self-respect, and to act as a vehicle for collective self-expression by the blind. By providing public education about blindness, information and referral services, scholarships, literature and publications about blindness, aids and appliances and other adaptive equipment for the blind, advocacy services and protection of civil rights, development and evaluation of technology, and support for blind persons and their families, members of the NFB strive to educate the public that the blind are normal individuals who can compete on terms of equality. This effort and this purpose have been and continue to be adversely affected by Defendant's violations of the law as alleged herein.

15.     CCDC is a non-profit corporation incorporated in the State of Colorado. It is a state-wide organization of people with disabilities – including those who are blind or visually impaired – and their nondisabled allies. The CCDC's purpose is to ensure full participation of all people with all types of disabilities in the entire community. As part of that purpose, the CCDC seeks to ensure that people with disabilities have access to, and do not encounter discrimination in, places of public accommodation. The CCDC engages in extensive outreach as well as advocacy and educational efforts to promote access for and combat discrimination against people with disabilities. This effort and this purpose have been and continue to be adversely affected by Defendant's violations of the laws as alleged herein.

16.     Arthur Jacobs is and, at all times relevant hereto, was a resident of the City and State of New York.  He is and, at all times relevant hereto, has been legally blind and is therefore

6

a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq.*, the New York Executive Laws, §292(21) *et seq.*, and NYC Admin. Code§ 8-102(16).  He also is a member of the NFB.

17.     Dishon Spears is and, at all times relevant hereto, was a resident of the State of Colorado. He is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq.*, and the CADA, C.R.S. § 24-34-301(2.5). He also is a member of the NFB and CCDC.

18.     Richard King is and, at all times relevant hereto, was a resident of the State of California.  He is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq.*, California Civil Code § 51(e)(1), and Cal. Civ. Code § 54(b)(1).

19.     Stacy Cervenka is and, at all times relevant hereto, was a resident of the State of California. She is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq.*, California Civil Code § 51(e)(1), and Cal. Civ. Code § 54(b)(1).  She also is a member of the NFB.

20.     Jeanine Lineback is and, at all times relevant hereto, was a resident of the State of Texas.  She is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq.*, and THRC, § 121.002(4).  She also is a member of the NFB.

7

21.     Defendant is a corporation incorporated in Delaware and headquartered in New York, New York.  Defendant owns, leases, or operates a place of public accommodation pursuant to 42 U.S.C. § 12181(7)(E), New York Executive Laws, §292(9), NYC Admin. Code§ 8-102(9), New York Civil Rights Law § 40, C.R.S. § 24-34-301(5.3), California Civil Code § 51; Cal. Civ. Code § 54.1, and a public facility pursuant to Tex. Hum. Res. Code Ann. § 121.002(5).

## FACTUAL ALLEGATIONS

22.     J.Crew is a nationally recognized retailer of men's, women's and children's apparel, shoes and accessories.  As of June 4, 2015, Defendant currently operates five-hundred and fourteen (514) retail and factory stores in the United States. Defendant's stores include approximately forty-two (42) in New York, twelve (12) in Colorado, fifty-seven (57) in California, and twenty-nine (29) in Texas.

23.     J.Crew's annual gross revenue from its stores was $2,579,695,000.00 in 2014.  On information and belief, on an annual basis, Defendant processes millions of transactions via the POS Devices at issue in this case.

24.     It is estimated that there are 10 million Americans who are visually impaired, including approximately 1.3 million that are legally blind.  Although precise numbers are not available at this time, it is safe to estimate that blind customers make at least tens of thousands of sales transactions on an annual basis at Defendant's many locations.  The minimum statutory damages at issue in this case on a class wide basis exceed $5,000,000.

25.     This case arises out of J.Crew's failure to comply with the legal regulations requiring it to provide equal access to its products and services to its blind or visually impaired customers.  Specifically, Defendant has failed to design, construct, and/or own or operate POS Devices that are fully accessible to and independently usable by blind or visually impaired people.

The POS Devices in many of Defendant's stores throughout the United States are not fully accessible to and independently usable by blind or visually impaired people.

26.     Instead, the POS Devices have touchscreen surfaces with features that are not accessible or in any way discernible to individuals who are blind or visually impaired.  The POS Devices lack adequate features that would make them fully accessible to the blind – they provide no text to speech capability; they are not sufficiently tactually discernable; and they provide no alternative, nonvisual manner in which to access them.  Defendant does not provide any auxiliary aids or services calculated to make its POS Devices fully accessible to and independently usable by blind or visually impaired people.

27.     To make a debit card purchase using J.Crew's POS Devices, a customer must enter their PIN.  Because a blind or visually impaired individual cannot discern the numerical references displayed on the keypad of the POS Device, a blind or visually impaired individual does not have the ability to independently make a debit card purchase, or a credit card transaction requiring a PIN.  Instead, the blind or visually impaired consumer must divulge their pin to a complete stranger in order to complete such a transaction.

28.     A customer's use of a debit card affords the added protection of requiring a PIN to complete the transaction.  This extra layer of protection is important in the event a card is lost or stolen.  For a blind or visually impaired customer who is required to disclose that PIN to store cashiers in order to proceed with a transaction, that security is compromised.

29.     As the DOJ explained in the *New* case, considerations such as the security or confidentiality of banking information are important in determining whether an auxiliary aid or service is appropriate, and requiring disclosure of a confidential PIN is not an appropriate auxiliary aid or service.  *New-SOI*, at pp. 10-11.

9

30.     Indeed, POS Devices with tactually discernible keypad surfaces – which are independently usable by blind or visually impaired individuals – are readily available, and are used by a substantial percentage of retailers.

31.     Additionally, Defendant's touchscreen POS Devices have the capacity to provide more information than that which is necessary for completing a transaction.  Due to the fact that the information being presented through these touchscreen devices is entirely inaccessible in a nonvisual manner, blind or visually impaired customers stand the significant risk of not having full and equal access to goods and services being offered by Defendant, even when using a credit card.

32.     Many of the NFB's members, including Plaintiffs, patronize Defendant's retail stores, intend to continue to do so in the future, and would like to patronize Defendant's retail stores when the discriminatory barriers are removed or cured.

33.     The elimination of discriminatory practices such as those of J.Crew is at the core of the NFB's and the CCDC's organizational purposes.  To the extent this lawsuit seeks injunctive and/or declaratory relief, the individual participation of each injured NFB and CCDC member is not indispensable to the proper resolution of this case.

34.     In addition, Defendant's actions have caused and continue to cause distinct and palpable injury to the NFB and the CCDC themselves, along with their members.  Defendant's discriminatory practices have caused the NFB and the CCDC to expend their resources to investigate and remedy the violations of law alleged herein.

35.     Despite explicit state law mandating ADA level compliance for POS Devices affecting its California stores, previous lawsuits claiming its POS Devices violate the ADA and local state law equivalents, and having had sufficient warning and ample time to comply with a

clear directive from the DOJ (which most other merchants did long ago) J.Crew continues to fail to provide accessible POS Devices in all of its stores.

36.     J.Crew operates 514 stores nationwide and earns billions of dollars in revenue on an annual basis.

37.     Defendant can certainly afford to provide the same tactually discernible keypads and other methods of nonvisual access to all of its blind or visually impaired customers in all of its retail stores.  They should be required to provide accessible POS Devices to all of their stores now, when it matters for its customers, not at its own delayed, uncertain, or leisurely pace.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

38.     On July 26, 1990, President George H.W. Bush signed into law the ADA, a comprehensive civil rights law prohibiting discrimination on the basis of disability.  Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements.

39.     The ADA broadly protects the rights of individuals with disabilities in employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life.

40.     Title III of the ADA prohibits discrimination in the activities of places of public accommodation and requires places of public accommodation to comply with ADA standards and to be readily accessible to and independently usable by individuals with disabilities. 42 U.S.C. § 12181-89.

41.     The Department of Justice is the administrative agency charged by Congress with implementing the requirements of the ADA.  In the *New* case, the DOJ explained that a failure to provide auxiliary aids or services necessary to complete private and independent debit card

11

transactions violates the statutory and regulatory provisions of Title III of the ADA.  *New-SOI*, at pp. 13-14.

42.     Notwithstanding this clear guidance from the DOJ, J.Crew has failed to provide POS Devices in its stores that are accessible to the blind or visually impaired.

43.     Similar to the ADA, the New York legislature enacted comprehensive civil rights laws prohibiting discrimination in the city and state of New York on the basis of disability.  New York laws prohibit discrimination of a person's civil rights and the direct or indirect, refusal, withholding from, or denial of any of the accommodations, advantages, facilities or privileges of a place of public accommodation.  *See* N.Y. Civil Rights Law § 40-c(2), and NY Exec. Laws. § 296(2)(a).

44.     The Colorado legislature enacted the CADA as a comprehensive civil rights law prohibiting discrimination in the state of Colorado on the basis of disability. CADA prohibits discrimination in places of public accommodation and entitles individuals who are visually or hearing impaired, or individuals with a disability, full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation. *See* C.R.S. §§ 24-34-601, 801.

45.     The California legislature has enacted comprehensive civil rights laws prohibiting discrimination in the state of California on the basis of disability.  The laws prohibit discrimination in places of public accommodation and entitle individuals who are visually or hearing impaired, or individuals with a disability, full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation.  *See* California Financial Code § 13082, California Civil Code §§ 51, *et seq*., and Cal. Civ. Code §§ 54-54.3.

46.     Texas law likewise prohibits discrimination in public facilities and entitles individuals who are visually or hearing impaired, or individuals with a disability, full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of public facilities.  *See* Tex. Hum. Res. Code Ann. § 121.003.

47.     Each of these state laws provide for minimum statutory damages for any violation.

## FACTS PERTAINING TO NAMED PLAINTIFFS

48.     The NFB is a membership organization.  Its members include many people like Arthur Jacobs, Dishon Spears, Stacy Cervenka, and Jeanine Lineback who are blind or visually impaired.  Many of these people are regular patrons of retail establishments such as J.Crew.

**a.     Arthur Jacobs**

49.     In or about June of 2015, Arthur Jacobs visited a J.Crew and a Madewell store located in New York, New York.

50.     Arthur Jacobs was unable to make a debit card purchase independently at either location because, at the time of the visits, the POS Devices available at J.Crew and Madewell had only touchscreens that could not be read or viewed by Mr. Jacobs. He was therefore unable to independently enter his PIN to complete a transaction at either store.  Mr. Jacobs has been denied the full enjoyment of the facilities, goods and services of J.Crew as a result of accessibility barriers at Defendant's stores.

**b.     Dishon Spears**

51.     In or about March of 2015, Dishon Spears visited a J.Crew and a Madewell store located in Lone Tree, Colorado.

52.     Dishon Spears was unable to make a debit card purchase independently at either location because, at the time of the visits, the POS Devices available at J.Crew and Madewell had

only touchscreens that could not be read or viewed by Mr. Spears. He was therefore unable to independently enter his PIN to complete a transaction at either store. Mr. Spears has been denied the full enjoyment of the facilities, goods and services of Defendant as a result of accessibility barriers at its stores.

   **c.      Richard King**

53.      In or about March of 2015, Richard King visited a J.Crew and a Madewell store located in San Francisco, California.

54.      Richard King was unable to make a debit card purchase independently at either location because, at the time of the visits, the POS Devices at J.Crew and Madewell had only touchscreens that could not be read or viewed by Mr. King.  While an auxiliary pin pad device was ultimately located at the J.Crew store, neither the salesperson nor the store manager could get the device to work.  Mr. King was therefore unable to independently enter his PIN to complete a transaction at either store.  Mr. King has been denied the full enjoyment of the facilities, goods and services of Defendant as a result of accessibility barriers at its stores.

   **d.      Stacy Cervenka**

55.      In or about May of 2015, Stacy Cervenka visited one of Defendant's J.Crew stores located in Sacramento, California.

56.      Stacy Cervenka was unable to make a debit card purchase independently because, at the time of the visit, the POS Devices at the J.Crew store had only touchscreens that could not be read or viewed by Ms. Cervenka. She was therefore unable to independently enter her PIN to complete a transaction. Ms. Cervenka has been denied the full enjoyment of the facilities, goods and services of J.Crew as a result of accessibility barriers at Defendant's stores.

14

e.     **Jeanine Lineback**

57.     In or about May of 2015, Jeanine Lineback visited one of Defendant's stores located in Austin, Texas.

58.     Jeanine Lineback was unable to make a debit card purchase independently because, at the time of the visit, J.Crew's POS Devices had only touchscreens that could not be read or viewed by Ms. Lineback. She was therefore unable to independently enter her PIN to complete a transaction. Ms. Lineback has been denied the full enjoyment of the facilities, goods and services of J.Crew as a result of accessibility barriers at Defendant's stores.

## CLASS ALLEGATIONS

59.     Plaintiffs seek certification of the following class (hereinafter referred to as the "Nationwide Class") pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2):

> All individuals in the United States who were unable to independently complete a debit or credit card transaction requiring entry of a PIN independently in a nonvisual manner using a touchscreen POS Device at any J.Crew location because of a visual disability, at any time during the applicable limitation period through the duration of any injunctive relief ordered by the Court.

60.     Plaintiffs also seek certification of the following New York subclass (referred to herein as the "New York Subclass") pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and, alternatively, 23(b)(3):

> All individuals who were unable to independently complete a debit or credit card transaction requiring entry of a PIN independently in a nonvisual manner using a touchscreen POS Device at any J.Crew location in the State of New York because of a visual disability, at any time during the applicable limitation period through the present.

61.     Plaintiffs also seek certification of the following Colorado subclass (referred to herein as the "Colorado Subclass") pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and, alternatively, 23(b)(3):

> All individuals who were unable to independently complete a debit or credit card transaction requiring entry of a PIN independently in a nonvisual manner using a touchscreen POS Device at any J.Crew location in Colorado because of a visual disability, at any time during the applicable limitation period through the present.

62.     Plaintiffs also seek certification of the following California subclass (referred to herein as the "California Subclass") pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and, alternatively, 23(b)(3):

> All individuals who were unable to independently complete a debit or credit card transaction requiring entry of a PIN independently in a nonvisual manner using a touchscreen POS Device at any J.Crew location in California because of a visual disability, at any time during the applicable limitation period through the present.

63.     Plaintiffs also seek certification of the following Texas subclass (referred to herein as the "Texas Subclass") pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and, alternatively, 23(b)(3):

> All individuals who were unable to independently complete a debit or credit card transaction requiring entry of a PIN independently in a nonvisual manner using a touchscreen POS Device at any J.Crew location in Texas because of a visual disability, at any time during the applicable limitation period through the present.

64.     The members of the Nationwide Class and each Subclass are so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action is a benefit to the parties and to the Court.

65.     There are common questions of law and fact involved affecting the parties to be represented in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's goods, facilities and/or services due to the lack of equal access to Defendant's goods and services as required by law for persons with disabilities. Common questions of law and fact include: (1) Whether J.Crew's retail establishments deny the full and equal enjoyment of its goods, services, facilities, privileges, advantages or accommodations to the blind in violation of the ADA and New York, Colorado, California, and Texas laws; (2) If so, what measures are legally required to bring J.Crew into compliance with the

ADA and state law; and (3) Whether Plaintiffs and members of the Nationwide Class and each Subclass sustained damages and, if so, the proper measure of damages or other relief.

66.     The claims of the named Plaintiffs are typical of those of the Nationwide Class and respective Subclasses.

67.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Nationwide Class.   Plaintiffs have retained and are represented by counsel competent and experienced in complex class action litigation.

68.     Class certification of the claims of the Nationwide Class and each Subclass is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because J.Crew has acted or refused to act on grounds generally applicable to the Nationwide Classes, making appropriate both declaratory and injunctive relief with respect to Plaintiffs and the Nationwide Class and each Subclass as a whole.

69.     Class certification of each Subclass is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to Subclass members predominate over questions affecting only individual Subclass members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.   In addition, because Plaintiffs seek only statutory damages for each instance of discrimination, there are no individual issues concerning each member's damages.

70.     Judicial economy will be served by maintenance of this lawsuit as a class action in that it is likely to avoid the burden which would otherwise be placed upon the judicial system by the filing of numerous individual lawsuits and there are no obstacles to effective and efficient management of this lawsuit as a class action.

## FIRST CAUSE OF ACTION

(Violation of 42 U.S.C. §§ 12181, *et seq.* – Title III of the Americans with Disabilities Act)
(On Behalf of All Plaintiffs and the Nationwide Classes)

71.     Plaintiffs incorporate by reference the preceding allegations pled in paragraphs 1-70 of this Complaint.

72.     Section 302(a) of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

73.     Title III of the ADA applies to "any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).  Defendant owns, leases (or leases to) and/or operates places of public accommodation.

74.     Defendant is a chain of retail stores and, therefore, a place of public accommodation within the definition of Title III of the ADA. 42 U.S.C. §§12181(7)(E).

75.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation.

76.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

> a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations; and a failure to take such steps as may be necessary to ensure that

no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

77.     Defendant has discriminated against Plaintiffs and the Nationwide Class in that it has failed to make its POS Devices fully accessible to, and independently usable by, individuals who are blind or visually impaired in violation of 42 U.S.C. §§ 12101, 12102(2) and 28 C.F.R. §§ 36.101 *et seq*.  Providing the auxiliary aids and services mandated by the ADA would neither fundamentally alter the nature of Defendant's businesses nor result in an undue burden to Defendant.

78.     Defendant's conduct is ongoing, and, given that Defendant has repeatedly and with notice failed to comply with the ADA's requirements that public accommodations make their POS Devices fully accessible to and independently usable by blind or visually impaired individuals, Plaintiffs invoke their statutory rights to injunctive relief, as well as costs and attorneys' fees.

79.     Without the requested injunctive relief, specifically including the request that the Court retain jurisdiction of this matter for a period to be determined after Defendant certifies it is fully compliant with the mandatory requirements of the ADA that are discussed above, J.Crew's non-compliance with the ADA's requirements that its POS Devices be fully accessible to, and independently usable by, blind or visually impaired people is likely to recur.

### SECOND CAUSE OF ACTION

(Violation of New York State Human Rights Law §§ 290 *et seq*.)
(On behalf of Plaintiffs Arthur Jacobs, NFB, and the New York Subclass)

80.     Plaintiffs incorporate by reference the preceding allegations pled in paragraphs 1-79 of this Complaint.

81.     The New York State Human Rights Law was enacted because:

> the state has the responsibility to act to assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life and that the failure to provide such equal opportunity [] because of discrimination … not only threatens the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state and threatens the peace, order, health, safety and general welfare of the state and its inhabitants.

NY State Human Rights Law § 290(3).

82.     Pursuant to the New York State law:

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of … disability … of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof…

NY Exec. Laws § 296(2)(a).

83.     A place of public accommodation under New York law includes "wholesale and retail stores and establishments dealing with goods or services of any kind."  NY Exec. Laws. § 292(9).

84.     New York Executive Law defines the term "disability" as "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function…"  N.Y. Executive Law § 292(21).

85.     Plaintiff Arthur Jacobs is a person with a disability in that he is legally blind.

86.     By designing and employing POS Devices that are not independently accessible to blind customers, J.Crew has deprived Plaintiffs Jacobs, the NFB and its members, and the New York Subclass the full enjoyment of the accommodations, advantages, facilities or privileges of J.Crew's retail establishments in New York in violation of New York State Human Rights Law.

87.     Defendant has further violated the New York State Human Rights Law by violating the rights provided under the ADA.

20

88.     As a result of its violations of the New York State Human Rights Law, Plaintiffs and the New York Subclass are entitled to damages and other appropriate remedies.

### THIRD CAUSE OF ACTION

(Violation of New York Civil Rights Law §§ 40 *et seq*.)
(On behalf of Plaintiffs Arthur Jacobs, NFB, and the New York Subclass)

89.     Plaintiffs incorporate by reference the preceding allegations pled in paragraphs 1-88 of this Complaint.

90.     Pursuant to New York Civil Rights Law section 40, "[a]ll persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations … [n]o person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any such place shall directly or indirectly … deny to any person any of the accommodations, advantages, facilities or privileges thereof…"  N.Y. Civil Rights Law § 40.

91.     Under New York Civil Rights Law section 40, a "place of public accommodation … within the meaning of this article, shall be deemed to include … retail stores and establishments." N.Y. Civil Rights Law § 40.

92.     Defendant is a retail store and therefore is a place of public accommodation for purposes of New York Civil Rights Law.

93.     New York Civil Rights Law provides in relevant part that "[n]o person shall, because of … disability, as such term is defined in section two hundred ninety-two of the executive law, be subjected to any discrimination in his or her civil rights … in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision of the state."  N.Y. Civil Rights Law § 40-c(2).

21

94.     New York Executive Law defines the term "disability" as "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function…"  N.Y. Executive Law § 292(21). Blindness and visual impairment constituting legal blindness are disabilities under this definition.

95.     Plaintiff Arthur Jacobs is a person with a disability in that he is legally blind.

96.     The NFB has multiple New York chapters, with its New York City chapter located at Selis Manor, 135 W. 23rd St., New York, New York 10011.

97.     By designing and employing POS Devices that are not independently accessible to blind customers, J.Crew has deprived Plaintiffs Jacobs, the NFB and its members, and the New York Subclass the full enjoyment of the accommodations, advantages, facilities or privileges of J.Crew's retail establishments in New York in violation of New York Civil Rights Law section 40.

98.     Defendant has violated the New York Human Rights Law.  "Any person who shall violate any of the provisions of the foregoing section … shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved…"  N.Y. Civil Rights Law § 40-d.

99.     Plaintiffs and the New York subclass are entitled to statutory damages and other relief as appropriate. Notice of the action has been served upon the Attorney-General as required by New York Civil Rights Law § 40-d.

## FOURTH CAUSE OF ACTION

(Violation of New York City Human Rights Law - NYC Admin. Code§ 8-107)
(On behalf of Plaintiffs Arthur Jacobs, NFB, and the New York Subclass)

100.     Plaintiffs incorporate by reference the preceding allegations pled in paragraphs 1-99 of this Complaint.

101.     The New York City Human Rights Law provides:

> (a) It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of the actual or perceived ... disability ... of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof . . . to the effect that any of the accommodations, advantages, facilities and privileges of any such place or provider shall be refused, withheld from or denied to any person on account of ... disability ...

NYC Admin. Code§ 8-107(4)(a).

102.    The term "person" includes "partnerships, associations, group associations, organizations … corporations…" NYC Admin. Code§ 8-102(1).

103.    The "term 'place or provider of public accommodation' shall include providers, whether licensed or unlicensed, of goods, services, facilities, accommodations, advantages or privileges of any kind…" NYC Admin. Code§ 8-102(9).

104.    The term "disability" means "any physical, medical, mental or psychological impairment."   NYC Admin. Code§ 8-102(16)(a).

105.    Plaintiff Arthur Jacobs is a person with a disability in that he is legally blind.

106.    The NFB has multiple New York chapters.

107.    Defendant is in violation of the New York City Human Rights Law by denying Plaintiff Jacobs, the NFB and its members, and the New York Subclass full and safe access to all of the benefits, accommodations and services of its New York City stores.

108.    Plaintiffs invoke their statutory rights to injunctive relief, as well as costs and attorneys' fees. *See* NYC Admin. Code§ § 8-502(a), (f)

109.    Pursuant to New York City Human Rights Law § 8-502(c), notice of this action will be served on the Office of the Corporation Counsel and the City Commission on Human Rights.

## **FIFTH CAUSE OF ACTION**

(Violation of the Colorado Anti-Discrimination Act)
(On Behalf of Plaintiffs Dishon Spears, NFB, CCDC, and the Colorado Subclass)

110.    Plaintiffs incorporate by reference the preceding allegations pled in paragraphs 1-109 of this Complaint.

111.    C.R.S. § 24-34-601(1) defines a "place of public accommodation" to include "any place of business engaged in any sales to the public," including "any business offering . . . retail sales to the public."

112.    Defendant's stores in Colorado are places of business engaged in sales to the public and therefore are places of public accommodation for purposes of C.R.S. § 24-34-601.

113.    C.R.S. § 24-34-601(2) provides in relevant part that "[i]t is a discriminatory practice and unlawful for a person, directly or indirectly, to refuse, withhold from, or deny to an individual or a group, because of disability . . . the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation . . . ."

114.    Pursuant to the regulations implementing the CADA:

> Whenever possible, the interpretation of state law [the provisions of Parts 3 through 7 of Article 34 of Title 24, C.R.S. (1988), as amended] concerning disability shall follow the interpretations established in Federal regulations adopted to implement the Americans with Disabilities Act and . . . in the Federal case law interpreting the Americans with Disabilities Act . . . ."

3 Colo. Code Regs. 708-1:60.1(c)(bracketed text in original).

115.    By, among other things, designing and employing POS Devices that are not independently accessible to blind customers, J.Crew deprived Plaintiffs Spears, the NFB and its members, the CCDC and its members, and the Colorado Subclass the full enjoyment of the goods, services, facilities, privileges, advantages or accommodations of the J.Crew retail establishments in Colorado in violation of § 24-34-601.

24

116.    Plaintiff Spears is a person with disabilities in that he is legally blind.

117.    The NFB operates in Colorado and has multiple Colorado chapters.

118.    The CCDC operates in Colorado and is located at 655 Broadway, Suite 775 Denver, Colorado 80203.

119.    As a result of Defendant's noncompliance with the CADA, Defendant must be fined not less than fifty dollars ($50) for each violation. C.R.S. § 24-34-602.

120.    Plaintiffs Spears, the NFB and its members, the CCDC and its members, and the Colorado Subclass are further entitled to any of the statutory remedies available under C.R.S. § 24-34-802(2)(a), including a Court order requiring compliance with the provisions of the applicable section.

## SIXTH CAUSE OF ACTION

(Violation of California Financial Code § 13082)
(On behalf of Plaintiffs Richard King, Stacy Cervenka, NFB, and the California Subclass)

121.    Plaintiffs incorporate by reference the preceding allegations pled in paragraphs 1-120 of this Complaint.

122.    California Financial Code § 13082 ("CFC § 13082") states:

(a) Whenever a point-of sale system is changed or modified to include a video touch screen or any other nontactile keypad, the point-of-sale device that would include the video touch screen or nontactile keypad shall also be equipped with either of the following:

(1) A tactually discernible numerical keypad similar to a telephone keypad containing a raised dot with a dot base diameter between 1.5 millimeters and 1.6 millimeters and a height between 0.6 millimeters and 0.9 millimeters on the number 5 key that enables a visually impaired person to enter his or her own personal identification number or any other personal information necessary to process the transaction in a manner that provides the opportunity for the same degree of privacy input and output available to all individuals...

123.     CFC § 13082 went into effect January 1, 2006, but retailers were given four years,
until January 1, 2010 to bring their stores into compliance. Thus, tactile keypads are required at
every check-out location in California with a flat screen point of sale device. The keypads must be
permanently attached.

124.     Defendant is and has systematically violated CFC § 13082.  Defendant has
discriminated against Plaintiff King, Cervenka, the NFB and its members, and the California
Subclass in that it has failed to make its POS Devices fully accessible to, and independently useable
by, individuals who are blind in violation of CFC § 13082 and therefore Plaintiffs King, Cervenka,
the NFB and its members, and the California Subclass are entitled to injunctive relief to remedy
the discrimination and cost of this suit.

**SEVENTH CAUSE OF ACTION**

(Violation of California Civil Code §§ 51, *et seq.* – the Unruh Civil Rights Act)
(On behalf of Plaintiffs Richard King, Stacy Cervenka, NFB, and the California Subclass)

125.     Plaintiffs incorporate by reference the preceding allegations pled in paragraphs 1-
124 of this Complaint.

126.     The California Unruh Civil Rights Act, California Civil Code §§ 51, *et seq.,*
guarantees equal access for people with disabilities to the accommodations, advantages, facilities,
privileges, and services of all business establishments of any kind whatsoever.

127.     Defendant has systematically violated the Unruh Civil Rights Act, California Civil
Code §§ 51, *et seq.*  Defendant is and has discriminated against Plaintiffs King, Cervenka, the NFB
and its members, and the California Subclass in that it has failed to provide equal access to the
goods and services available at its retail stores, specifically by failing to make its POS Devices
fully accessible to and independently useable by individuals who are blind in violation of the
Unruh Civil Rights Act, California Civil Code §§ 51, *et seq.* and therefore Plaintiffs King,

26

Cervenka, the NFB and its members, and the California Subclass are entitled to injunctive relief to remedy the discrimination.

128.    Defendant has discriminated against Plaintiffs King, Cervenka, the NFB and its members, and the California Subclass in that it has failed to provide auxiliary aids and services calculated to make its POS Devices fully accessible to and independently usable by individuals who are blind or visually impaired in violation of The California Unruh Civil Rights Act, California Civil Code §§ 51, *et seq.* Providing the auxiliary aids and services mandated by the ADA would neither fundamentally alter the nature of Defendant's businesses nor result in an undue burden to Defendant.

129.    Defendant's conduct is believed to be ongoing, and, given that Defendant has not complied with the California Unruh Civil Rights Act requirements that business establishments make its POS Devices fully accessible to, and independently usable by, blind individuals, Plaintiffs King, Cervenka, the NFB and its members, and the California Subclass invoke their statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

130.    Without the requested injunctive relief, specifically including the request that the Court retain jurisdiction of this matter for a period to be determined after Defendant certifies that it is in full compliance with the mandatory requirements of the Unruh Civil Rights Act, California Civil Code §§ 51, *et seq.,* that are discussed above, Defendant's non-compliance with the California Unruh Civil Rights Act is likely to recur.

131.    Defendant is additionally violating California Civil Code § 51, in that the conduct alleged herein constitutes a violation of various provisions of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et s*eq.*, as set forth above. California Civil Code § 51(f) provides that a

violation of the right of any individual under the ADA shall also constitute a violation of the Unruh Civil Rights Act.

132.    The actions of Defendant were and are in violation of the Unruh Civil Rights Act, California Civil Code §§ 51, *et seq.*, and therefore Plaintiffs King, Cervenka, the NFB and its members, and the California Subclass are entitled to injunctive relief remedying the discrimination. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff King, Cervenka, the NFB and its members, and the California Subclass will continue to suffer irreparable harm.

133.    Plaintiffs King, Cervenka, NFB and its members, and the California Subclass are also entitled to statutory minimum damages pursuant to California Civil Code § 52 for each and every offense.

## EIGHTH CAUSE OF ACTION

(Violation of Cal. Civ. Code §§ 54-54.3 – the Disabled Persons Act)
(On Behalf of Plaintiffs Richard King, Stacy Cervenka, NFB, and the California Subclass)

134.    Plaintiffs incorporate by reference the preceding allegations pled in paragraphs 1-133 of this Complaint.

135.    California Civil Code § 54(a) states that "Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places."

136.    California Civil Code § 54.1 guarantees full and equal access for people with disabilities to all accommodations, advantages, facilities, and privileges of "all places of public accommodation" and "other places to which the general public is invited."

137.    Defendant's POS Devices throughout California constitute "places of public accommodation" or "other places where the public is invited" within the meaning of California Civil Code § 54.1.

138.    POS Devices constitute accommodations, advantages, facilities, and privileges provided by Defendant to members of the public in California and are, therefore, subject to the access requirements of California Civil Code § 54.1 applicable to "all places of public accommodation" and "other places to which the general public is invited."

139.    Defendant is and has violated the rights of blind or visually impaired persons to full and equal access to public places by denying full and equal access to POS Devices in violation of California Civil Code §§ 54-54.3.

140.    Defendant is and has also violated California Civil Code §§ 54-54.3, in that its actions are a violation of the ADA.  Any violation of the ADA is also a violation of California Civil Code § 54.1.

141.    As a result of Defendant's wrongful conduct, Plaintiffs King, Cervenka, the NFB and its members, and the California Subclass are entitled to statutory minimum damages under California Civil Code § 54.3 for each offense.  Plaintiffs do not seek injunctive relief under California Civil Code § 55.

## NINTH CAUSE OF ACTION

(Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*. – the Unfair Competition Law)
(On Behalf of Plaintiffs Richard King, Stacy Cervenka, NFB, and the California Subclass)

142.    Plaintiffs incorporate by reference the preceding allegations pled in paragraphs 1-141 of this Complaint.

143.     The Unfair Competition Law of the California Business & Practices Code (UCL) provides, in pertinent part that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice."  CA Bus. & Prof. § 17200.

144.     The unlawful prong of the UCL borrows violations of other laws and treats them as unlawful practices that are independently actionable under the UCL.

145.     Virtually any law or regulation – federal or state, statutory or common law – can serve as a predicate for an UCL "unlawful" violation.  If a business practice violates any law, it also violates Bus. & Prof. Code §§ 17200, *et seq*. and may be redressed.

146.     Defendant has violated the unlawful prong of the UCL by violating each of the following: 42 U.S.C. §§ 12181, *et seq*. – Title III of the Americans with Disabilities Act; the California Financial Code § 13082; the California Civil Code §§ 51, *et seq*. – the Unruh Civil Rights Act, and Cal. Civ. Code §§ 54-54.3.

147.     Pursuant to Cal. Bus. & Prof. Code section 17203, Plaintiffs King, Cervenka, the NFB and its members, and the California Subclass are entitled to equitable relief, including a permanent injunction enjoining Defendant from its unlawful business activities as alleged herein, and appropriate declaratory relief as described herein.

## TENTH CAUSE OF ACTION

(Violation of the Texas Human Resources Code – Tex. Hum. Res. Code Ann. § 121.001, *et seq*.)
(On Behalf of Plaintiffs Jeanine Lineback, NFB, and the Texas Subclass)

148.     Plaintiffs incorporate by reference the preceding allegations pled in paragraphs 1-147 of this Complaint.

149.     Texas passed the Texas Human Resources Code in an effort to "encourage and enable persons with disabilities to participate fully in the social and economic life of the state, to

achieve maximum personal independence…and to otherwise fully enjoy and use all public facilities available within the state." Tex. Hum. Res. Code Ann. § 121.001.

150. The THRC states "[p]ersons with disabilities have the same right as the able-bodied to the full use and enjoyment of any public facility in the state." Tex. Hum. Res. Code Ann. § 121.003(a).

151. The THRC defines a public facility as, *inter alia*, "a building to which the general public is invited." Tex. Hum. Res. Code Ann. § 121.002(5).

152. Defendant owns or operates a public facility as defined in § 121.002(5).

153. Failure to "provide auxiliary aids and services necessary to allow the full use and enjoyment of the public facility" is a prohibited form of discrimination. Tex. Hum. Res. Code Ann. § 121.003(d)(3).

154. Plaintiff Jeanine Lineback is an individual with a disability in that she is legally blind.

155. By failing to make their POS Devices fully accessible to and independently usable by individuals who are blind or visually impaired, Defendant has discriminated against Plaintiffs Lineback, the NFB and it members, and the Texas Subclass by denying them the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the Defendant's stores in Texas in violation of the THRC.

156. As a result of Defendant's noncompliance with the THRC, Plaintiffs Lineback, the NFB and it members, and the Texas Subclass "may maintain a cause of action for damages in a court of competent jurisdiction, and there is a conclusive presumption of damages in the amount of at least $300 to the person with a disability." Tex. Hum. Res. Code Ann. § 121.004(b).

## ELEVENTH CAUSE OF ACTION

(Declaratory Relief)
(On behalf of Plaintiffs, the Nationwide Class, and all Subclasses)

157.     Plaintiffs incorporate by reference the preceding allegations pled in paragraphs 1-156 of this Complaint.

158.     An actual controversy has arisen and now exists between the parties in that Plaintiffs contend, and are informed and believe that Defendant denies that its stores fail to comply with applicable laws including but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*., New York State Human Rights Law §§ 290 *et seq*., New York Civil Rights Law §§ 40 *et seq*., New York City Human Rights Law - NYC Admin. Code§ 8-107, Colorado Anti-Discrimination Act, C.R.S. § 24-34-601, *et seq*., California Financial Code § 13082, California Civil Code §§ 51, *et seq*. – the Unruh Civil Rights Act, Cal. Civ. Code §§ 54-54.3 – the Disabled Persons Act, Cal. Bus. & Prof. Code §§ 17200, *et seq*. – the Unfair Competition Law, and Tex. Hum. Res. Code Ann. § 121.001, *et seq*.

159.     A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs, on behalf of the NFB and its members, on behalf of CCDC and its members, Arthur Jacobs, Dishon Spears, Richard King, Stacy Cervenka, and Jeanine Lineback, and the members of the Nationwide Class and respective Subclasses, pray for:

      a.   An Order certifying the Nationwide Class and Subclasses proposed by Plaintiffs, and naming each Plaintiff as a representative of the Nationwide Class and appropriate Subclass, and appointing counsel as Class Counsel;

32

b. A declaratory judgment that at the commencement of this action Defendant was in violation of the specific requirements of the ADA, described above, the relevant implementing regulations of the ADA, the stated New York laws, the CADA, the stated California laws, and the THRC, as described above, in that the actions Defendant took were not reasonably calculated to ensure that all of its POS Devices would be fully accessible to, and independently usable by, blind or visually impaired individuals;

c. A permanent injunction which directs Defendant to take all steps necessary to brings its POS Devices into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the POS Devices are fully accessible to, and independently usable by, blind or visually impaired individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that all of its POS Devices are fully compliant with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully compliant with the law[5];

d. An award of statutory damages to the individual named Plaintiffs and members of each Subclass;

e. Payment of reasonable attorneys' fees and costs; and,

f. The provision of whatever other relief the Court deems just, equitable, and appropriate.

JURY DEMAND: Plaintiff demands a jury trial on all issues.

---

[5] As stated above, Plaintiffs do not seek injunctive relief under California Civil Code § 55.

Respectfully submitted this 11th day of August, 2015.

_s/ Jana Eisinger_
Jana Eisinger, Reg. No. 2639805
MARTINEZ LAW GROUP, P.C.
244 5th Avenue, #E208
New York, NY  10001-7604
212.726.1079
eisinger@mlgrouppc.com

Azra Z. Mehdi (AM 9719)
THE MEHDI FIRM, PC
One Market
Spear Tower, Suite 3600
San Francisco, CA 94105
Phone: 415.293.8039
Fax: 415.293.801
azram@themehdifirm.com

Scott C. LaBarre (_pro hac vice_ motion to be
submitted)
LABARRE LAW OFFICES, P.C.
1660 South Albion Street, Suite 918
Denver, CO 80222
303.504.5979
slabarre@labarrelaw.com

Kevin W. Williams (_pro hac vice_ motion to
be submitted)
COLORADO CROSS-DISABILITY
COALITION LEGAL PROGRAM
655 Broadway, Suite 775
Denver, CO 80203
720.336.3584
kwilliams@ccdconline.org

ATTORNEYS FOR PLAINTIFFS AND
ALL OTHER INDIVIDUALS SIMILARLY
SITUATED